GILBERT BRYAN,

        Plaintiff,

v.

                                 Case No. 5:26-cv-00103-BO-RJ

LENDMARK FINANCIAL
SERVICES LLC,

        Defendant.

## DEFENDANT LENDMARK FINANCIAL SERVICES, LLC'S RESPONSE TO PLAINTIFF'S MOTION TO REMAND

COMES NOW, Defendant Lendmark Financial Services, LLC ("Lendmark" or "Defendant"), by and through its undersigned counsel, and for its Response to Plaintiff's Motion to Remand, showing this Honorable Court as follows:

### I.    INTRODUCTION

Plaintiff asks this Court to remand this matter to the State Court claiming that his Complaint raises only state-law claims because Plaintiff has carefully avoided invoking independent causes of action under the Fair Credit Reporting Act ("FCRA") or the Equal Credit Opportunity Act ("ECOA"). Plaintiff, however, cannot avoid federal jurisdiction by simply omitting the statutes upon which his claims depend and under which his claims arise. The FCRA and ECOA are intrinsic to the resolution of Plaintiff's claims, and the substantial federal interest in the application and interpretation of the statutes as requested in Plaintiff's Complaint demands federal jurisdiction over the claims.

1

Plaintiff seeks to have a court declare the rights and obligations regarding the information that must be provided to an applicant for credit when an Adverse Action Notice is the result of such an application, and the data retention requirements when a consumer applies for an application for credit. Furthermore, Plaintiff alleges a claim of unjust enrichment, claiming a lender is unjustly enriched by its statutory requirement to retain applicant information, and seeks damages from Lendmark for complying with its statutory duties. There is an important federal interest in having these Consumer Protection statutes reviewed by the Federal Court, and remand must be denied.

## II.    FACTUAL BACKGROUND

1.    On or about October 9, 2025, Plaintiff contacted Lendmark seeking financing for the purchase of a vehicle.  Plaintiff provided Lendmark the information to complete the application over the telephone to determine if Lendmark would extend credit to Plaintiff for the purchase.

2.    Lendmark reviewed Plaintiff's application and credit report, and sent Plaintiff an Adverse Action Notice, which advised Plaintiff that his application for credit was denied, informed him of the reasons for the denial, the name of the credit bureau (or credit reporting agency) whose report on which Lendmark relied in making the adverse determination, the credit score reported by the bureau (along with the required score range information), the key factors that adversely affected Plaintiff's credit score, directed Plaintiff to the credit reporting agency with any questions regarding the stated credit score, that Plaintiff could receive a free copy of his credit report through the reporting agency that provided the report relied upon, and other required disclosures. (*See* **Ex. A**).

3.    Though the Adverse Action Notice provided this information to Plaintiff, on November 7, 2025, Lendmark received a letter from Plaintiff referring to himself as "Gilbert:

2

Family of Bryan, Agent for Principal GILBERT BRYAN, and Beneficiary Without Prejudice" and addressed to "Ted: Family of Owen, Branch Manager" and "David: Family of Neaves Chief Financial Officer"—hallmarks of a sovereign citizen litigant. (*See* **Ex. B**). The letter purported to be a "Notice of Claim to Interest and Formal Request for Disclosure" and requested the information upon which Lendmark made its credit decision—which was provided in in the Adverse Action Letter, which Plaintiff acknowledged in his letter. (*Id.*). True to form for a sovereign citizen litigant, the letter ended by requiring a response within an arbitrary short period of time or dire consequences or "acquiescence" would occur.[1] (*Id.*).

3.     Plaintiff filed his Complaint in the Superior Court of Cumberland County, North Carolina on January 20, 2026, under Civil Action Number 26CV000868-250. (D.E. 1-1, pp. 2–8).

4.     Lendmark removed the matter to this Court on February 20, 2026. (D.E. 1).

5.     Lendmark moved to dismiss Plaintiff's claims for failure to state a claim on February 27, 2026. (D.E. 5, 6).

6.     On the same date, the Court issued a Rule 12 letter to Plaintiff advising Plaintiff of the Motion to Dismiss and the March 20, 2026 deadline for Plaintiff to respond. (D.E. 7).

7.     On March 2, 2026, Plaintiff filed a Motion to Remand. (D.E. 8).

### III.     LEGAL STANDARD

In determining whether a Federal Court has jurisdiction over federal issues imbedded in state law claims, courts use a four part test: "[1] does a state-law claim necessarily raise a stated federal issue, [2] actually disputed and [3] substantial, [4] which a federal may entertain without

---

[1] *Santiago v. Century 21/PHH Mortgage*, 2013 WL 1281776, \*1, n.3, 1:12-cv-02791 (N.D. Ala. Mar. 27, 2013) ("The court recognizes the use of 'affidavits' and other pseudo-legal documents that purport to require some responses within a specified time or face 'legal consequences' of the author's own making. Such tactics do not create valid legal documents.")

disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & sons Metal Prod., Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 314 (2005). Federal jurisdiction is proper "so long as it 'appears from the [complaint] that the right to relief depends upon the construction or application of [federal law].'" *Id.*, at 313, quoting *Smith v. Kansas City Title & Trust Co.*, U.S. 180, 199 (1921).

## IV.    ARGUMENT AND CITATION OF AUTHORITY

A defendant may remove a case from state court where a federal question is raised or where there is diversity of citizenship. *See* 28 U.S.C. §1441(a), (b). Federal question jurisdiction exists where a claim arises under the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. §1331. There are two ways a claim can *arise* under federal law. The first, most common being, "when a federal law creates the cause of action asserted." *Flying Pigs, LLC v. RRAJ Franchising, LLC*, 757 F.3d 177 (4th Cir. 2014). The second is where a state-law cause of action implicates a significant federal issue. *Id.*, citing *Grable*, supra, 545 U.S. at 312. A claim arises under federal law when "every legal theory supporting the claim requires the resolution of a federal issue." *Id.*, citing *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (en banc). A claim does not arise under federal law where "[t]he most one can say is that a question of federal law is lurking in the background." *Pinney v. Nokia, Inc.*, 402 F.3d 430, 446 (4th Cir. 2005).

**A.    Federal Jurisdiction is Proper Because Plaintiff's Claims Arise Under Federal Law.**

1.    *Plaintiff's Claims Necessarily Raise a Federal Issue*

This is not a case where "[t]he most one can say is that a question of federal law is lurking in the background." *Pinney*, 402 F.3d at 446. No, despite Plaintiff's protestations, federal consumer protection laws take center stage in Plaintiff's claims. Plaintiff's first count for declaratory judgment asks for a declaration as to the parties' rights and obligations regarding

4

Lendmark's obligations to disclose and account for its use of information gathered when and after he called Lendmark and applied for an automobile loan, and the lawfulness of Lendmark's adverse credit action procedures. The rights and obligations and lawfulness of Lendmark's actions are determined and governed by the FCRA and the ECOA. Essentially, Plaintiff is asking the Court to declare whether Lendmark complied with these statutes in its handling of his application, the resulting Adverse Action Notice, and his subsequent sovereign citizen type notice to Lendmark. Thus, Plaintiff's state-law declaratory judgment claim necessarily raises a stated federal issue, or in other words, the claim arises under federal law.

Plaintiff's second count alleges unjust enrichment claiming Lendmark obtained "valuable benefits" from the use of the information used for the underwriting and decision-making from Plaintiff's failed credit application, and that Plaintiff received no benefit. Plaintiff alleges that Lendmark's statutorily mandated retention of the information related to his credit application and the denial thereof, unjustly enriches Lendmark, requiring disgorgement. To state a claim for unjust enrichment Plaintiff "must allege that property or benefits were conferred on a defendant under circumstances which give rise to a legal or equitable obligation on the party of the defendant to account for the benefits received, but that the defendant has failed to make restitution for the property or benefits." *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 417 (2000). Here, Plaintiff is advocating for a potential creditor to be penalized for complying with federal requirements in the FCRA and ECOA (and its implementing regulation, Regulation B) to retain records of applications and adverse action notices through a common law unjust enrichment claim. Basically, Plaintiff is advocating for a potential lender to have to pay an applicant for their submission of an application. There is a clear federal interest in Plaintiff's second count, which again is central to the claim and not lurking in the shadows.

Plaintiff's third count for accounting is not a cause of action. "An accounting is '[a] rendition of an account, either voluntarily or by court order. The term frequently refers to the report of all items of property, income, and expenses prepared by a personal representative, trustee, or guardian and given to heirs, beneficiaries or the probate court.' An accounting is an equitable remedy sometimes pleading in claims of breach of fiduciary duty." *Burgess v. Burgess*, 205 N.C. App. 325, 333 (2010). Because accounting is not a cause of action, it is not relevant to the issue of remand.

Plaintiff's final count is for injunctive relief, seeking an injunction "requiring Defendant to: a. cease further use or dissemination of Plaintiff's personal or financial information absent lawful justification; b. provide full accounting of data obtained, sources accessed, and internal evaluations; c. correct, suppress, or purge inaccurate or improperly retained information; and d. certify compliance with the Court's order." (D.E. 1, ¶40). A preliminary injunction "will be issued only (1) if a plaintiff is able to show *likelihood* of success on the merits of his case and (2) if a plaintiff is likely to sustain irreparable loss unless the injunction is issues, or if, in the opinion of the Court, issuance is necessary for the protection of a plaintiff's rights during the course of litigation." *A.E.P. Industries, Inc. v. McClure*, 308 N.C. 393, 401 (1983) quoting *Investors, Inc. v. Berry*, 293 N.C. 688, 701 (1977) (internal citations omitted). Determining success on the merits again places the FCRA and ECOA in the spotlight, as the requirements of the statutes and Lendmark's compliance controls whether Plaintiff can succeed on the merits, which Lendmark disputes.

Plaintiff's own Complaint admits the source of the requirements and obligations from which he frames his claims, stating, "[s]tandards governing credit decision-making, disclosure, and data handling – including those reflected in federal consumer-protection statutes-inform

6

Defendant's duties and reasonable commercial practices." (D.E. 1, ¶22). The word "inform" cannot obscure that the FCRA and ECOA *are the standards* by which any decision on Plaintiff's claims will be made. In order to declare the rights and obligations of the parties, determine whether Lendmark is unjustly enriched by retaining loan application information requires interpretation of the FCRA and ECOA requirements for the retention of information, and determining the Plaintiff's request for injunctive relief is dependent on the probability of success of Plaintiff's other claims, which require the Court to construe the FCRA and ECOA, along with their implementing regulations.

### 2. *Plaintiff's Claims Raise Federal Issues that are Actually Disputed.*

The "actually disputed" prong requires that the parties genuinely contest the federal issue. *Gunn v. Minton*, 568 U.S. 251, 259 (2013). Here, as in *Gunn*, the federal issue is "'actually disputed' here – indeed, on the merits, it is the central point of dispute… This is just the sort of 'dispute…respecting the…effect of [federal] law' that *Grable* envisioned." *Id*. Plaintiff's claims seek to determine the effect of federal law related to his application for credit with Lendmark in a way that Lendmark vigorously disputes.

### 3. *Plaintiff's Claims Raise Federal Issues that are Substantial.*

Plaintiff's claims raise issues, the resolution of which are important and substantial at a federal level. For instance, Plaintiff seeks to create a system wherein potential lenders are forced to pay denied applicants for their applications because the potential lenders are required to retain applicant information by the FCRA and EOCA, through Plaintiff's unjust enrichment claim. Moreover, Plaintiff challenges the meaning of federal statues, which are actually in dispute. *Grable* found that the meaning of a federal statute "is an important issue of federal law that sensibly belongs in a federal court." *Grable*, 545 U.S. at 315. In contrast, *Gunn* found no such significance,

7

because in a legal malpractice claim "the [federal] question is posed in a merely hypothetical sense: *If* Minton's lawyers had raised a timely experimental-use argument, would the result in the patent infringement proceeding have been different? No matter how the state courts resolve that hypothetical 'case within a case,' it will not change the real-world result of the prior federal patent litigation." *Gunn*, 568 U.S. at 261.

Plaintiff's claims pose broader questions, such as whether a creditor who complies with the FCRA and ECOA can be subjected to state equitable claims demanding further disclosure, and whether federally mandated record retention can constitute "unjust enrichment" – which are legal questions of first impression with significant implications for the administration of federal consumer-protection law. This is not the type of backward-looking hypotheticals found lacking in *Gunn*. In this case, having a state court resolve the important questions raised in Plaintiff's claims will have a real world impact on "the development of a uniform body" of federal FCRA and ECOA law on the issues raised. *Id.* Therefore, based on the foregoing, Plaintiff's claims raise a substantial federal issue.

    4.    <u>*Federal Jurisdiction Does Not Disturb the Balance of Judicial Responsibilities*</u>

Exercising jurisdiction over Plaintiff's claims will not "disturb any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. Congress expressly provided for federal jurisdiction of FCRA and ECOA claims in 15 U.S.C. 1681p, and 15 U.S.C. §1691e(f). Resolving Plaintiff's claims in this Court does not disturb the balance between the federal and state courts, and exercising federal jurisdiction ensures the substantial federal issue is determined in federal court.

## V.    <u>CONCLUSION</u>

8

For the foregoing reasons, Plaintiff's Motion to Remand should be denied.  Plaintiff's claims raise disputed and substantial federal issues, and jurisdiction is proper in this Court.

WHEREFORE, Defendant Lendmark Financial Services, LLC prays this Honorable Court deny Plaintiff's Motion to Remand.

Dated: March 23, 2026.

HOLLAND & KNIGHT LLP

By: */s/ Nishma Patel*
Nishma Patel N.C. Bar No. 50922
1120 S. Tryon Street, Suite 900
Charlotte, North Carolina 28203
Phone 980.215.7797
Fax 980.215.7771
nishma.patel@hklaw.com

## CERTIFICATE OF COMPLIANCE

I, Nishma Patel, do hereby certify that the foregoing Response to Plaintiff's Motion to Remand complies with Local Rule 7.2(f).

*/s/ Nishma Patel*

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2026, I electronically filed the foregoing document with the Clerk of the Court CM/ECF. I also certify that the foregoing document is being served this day on all parties of record via transmission of Notices of Electronic Filing generated by CM/ECF, and also via U.S. First Class Mail and email addressed to:

Gilbert Bryan
5506 Dodge Drive
Fayetteville, NC 28314
Gbryan115@gmail.com

*/s/ Nishma Patel*
Nishma Patel
*Counsel for Defendant*

9